This is an appeal from a denial for motion for new trial on the grounds that the jury verdict was inadequate.
This action began when Doris Brenda Vinzant and Edward Lee Looney, pro se, filed a complaint against Keith Monroe Hughes alleging that Hughes negligently ran a stop sign and caused an accident, which injured Vinzant and Looney. Hughes answered denying liability for the accident and any injuries sustained by Vinzant and Looney. Following a jury trial, a verdict was returned for Vinzant in the amount of $6000, and for Looney in the amount of $248. Vinzant and Looney filed a motion for a new trial claiming the jury verdict was inadequate to cover the medical bills incurred, lost wages, and for pain and suffering. The motion was automatically denied. Rule 59.1, A.R.Civ.P. Vinzant and Looney appeal.
The dispositive issue is whether the trial court erred in denying the motion for new trial, which was based on the appellants' claim that the jury verdict was inadequate.
The appellants contend that they proved undisputed, actual damages, which substantially exceeded the jury verdict. They contend that the jury should have awarded them at least an amount equal to the special damages they proved. Specifically, they contend that they had admitted into evidence medical bills totalling $7,663.75 for Vinzant, and $1,024.75 for Looney. They also complain that the jury failed to award any amount for their pain and suffering. We note here that the general jury verdict did not indicate what amounts were special damages and what amounts, if any, were damages for pain and suffering.
Our review of the record reveals the following facts pertinent to this appeal. The vehicle Hughes was driving failed to stop at a stop sign, resulting in a collision with the vehicle of Vinzant and Looney. After completing the necessary police reports, Vinzant and Looney departed under their own power, but subsequently, they sought medical attention.
Dr. John Wagner was on duty at the hospital emergency room on the night of the accident and treated Vinzant and Looney. He testified that Vinzant had a cut above her right eye, which required no sutures, and a bruise to her back. He ordered x-rays of Vinzant's neck, which reflected no abnormalities. He identified medical bills from his office and testified to the reasonableness of the charges.
Dr. Michael Putnam testified that he had treated Vinzant and Looney after the initial treatment by Dr. Wagner. He testified that he found no abnormalities in Looney's x-rays. Dr. Putnam testified that Vinzant's x-rays showed an apparent suspicion of a soft tissue injury at the C5/C6 level, but that additional x-rays were interpreted to be within normal limits. Due to persistent complaints from Vinzant, he referred her to Dr. Rex Arendall, a neurosurgeon, to rule out further problems. Dr. Putnam also testified as to the amount and reasonableness of the charges for services rendered by his office to the appellants.
Dr. Arendall testified that his extensive evaluation and diagnostic testing on Vinzant was based on her complaints of alleged pain and the history she provided him. Myelograms performed in October and December of 1987 provided normal indications. X-rays taken in October of 1987 and reviewed by an orthopedist were interpreted as normal, except for a slight opening at the C5/C6 position of the vertebra, as compared to other spaces. In December of 1987, after further testing and evaluation, all tests, including myelogram and x-rays, were normal. No treatment was ever rendered to Vinzant by Dr. Arendall or the orthopedist. *Page 683 
Looney testified that he was seen by Dr. Putnam on a few occasions for complaints regarding his neck, but all x-rays revealed no abnormalities. He further testified that after complaining of his hand "drawing up", he was referred to a neurologist and an orthopedist, who ran numerous tests on him. However, neither doctor could find anything wrong with him. Vinzant testified that prior to the accident, she had an unrelated illness which caused her pain to the extent that she was unable to leave the house. However, her application for social security benefits for this illness was denied.
The facts in the instant case are similar to our earlier cases of Brannon v. Webster, 562 So.2d 1337
(Ala.Civ.App. 1990), and Davis v. Copas, 455 So.2d 27
(Ala.Civ.App. 1984). In the instant case, as there, our standard of review is extremely limited since jury verdicts carry a presumption of correctness on appeal that is strengthened by denial of a motion for new trial. A jury verdict will be reversed only if it is plainly and palpably wrong, and we are bound to review the evidence in the light most favorable to the prevailing party, indulging inferences the jury was free to draw. Ashbee v. Brock, 510 So.2d 214 (Ala. 1987).
Review of the record in this case reveals that, as inBrannon, supra, Hughes did not offer contradictory evidence as to special damages. Nevertheless, his counsel created conflicts and weaknesses in appellants' case through cross-examination of the witnesses, including the appellants themselves. See,Brannon, supra. Specifically, appellants' doctors testified that they found nothing to explain appellants' alleged pain and suffering. Further, there was testimony that in cases of this type, where litigation was ongoing, it was normal for pain to continue until the conclusion of litigation.
As we noted previously, "We are mindful of the recent supreme court holding concerning damages and stating: 'Having found the liability issue in favor of [plaintiff], the jury was not free to assess damages in an amount less than those special damages proven by way of medical expenses and loss of earnings, thatproximately resulted from the culpable conduct of the defendant.' " (Citations omitted.) Brannon, supra,562 So.2d at 1339.
The determination of damages lies within the discretion of the jury, which has the exclusive right to weigh the evidence, give credibility to the witnesses, and draw inferences therefrom. Brannon, supra. While such verdicts are afforded a strong presumption of correctness, they will be overturned on appeal where the damage award is not sufficient to cover proven expenses. Brannon, supra.
However, the discretion given to juries in the assessment of damages is not unbridled, but must be honest, legal, and sound. A jury verdict supported by competent evidence will not be set aside simply because an appellate court may have decided differently. Brannon, supra. citing Blount BrothersConstruction Co. v. Rose, 274 Ala. 429, 149 So.2d 821 (1962).
The jury is not bound to award medical expenses merely because they are incurred. It may question the reasonableness and necessity of expenses and determine whether the claimed medical expenses are proximately caused by the negligence of the defendant. Orr v. Hammond, 460 So.2d 1322
(Ala.Civ.App. 1984). Further, when the extent of the injury or injuries are uncertain, the jury has the discretion to determine the amount of damages. Lartigue v. Fleming, 489 So.2d 583
(Ala.Civ.App. 1986).
Appellants' own physicians gave testimony which conflicted with the claims of Vinzant and Looney regarding the nature and extent of their injuries. There was evidence from which the jury could have concluded that not all of the special damages claimed by Vinzant and Looney were proven to result from the Hughes' negligence. The uncertainties raised by the evidence presented a factual question for the jury of the degree of the injury and the treatment necessary. Brannon, supra. From a review of the record before us, it is clear that the jury, as the trier of the facts, did not *Page 684 
believe the appellants proved their claim of damages. See,Nemec v. Harris, 536 So.2d 93 (Ala.Civ.App. 1988) andLartigue, supra.
In view of the above, we cannot say the jury award was inconsistent with the evidence. Accordingly, we affirm.
AFFIRMED.
ROBERTSON, P.J., and RUSSELL, J., concur.